## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES of AMERICA** : | |
| : | |
| Plaintiff : | |
| : | Crim. No.: 21-CR-00465-2 (DLF) |
| *v.* : | |
| : | |
| **NICO GRIFFIN** : | |
| : | |
| Defendant : | |

### DEFENDANT'S MOTION TO RECONSIDER
### AND
### VACATE ORDER OF DETENTION

The Defendant, **NICO GRIFFIN,** by and through his attorney, Clark U. Fleckinger II, hereby moves this Honorable Court, pursuant to the provisions of 18 U.S.C. § 3145(b), to reconsider the Magistrate Judge's grant of the Government's motion to detain Mr. Griffin pending trial pursuant to the provisions of 18 U.S.C. § 3142(f)(1)(C).  Pursuant thereto, Mr. Griffin respectfully requests that the Court release him on his personal recognizance with the least restrictive conditions designed to reasonably assure both the appearance of Mr. Griffin for future proceedings and the safety of the community.  As grounds therefore, the Defendant represents as follows:

1.  That, Mr. Griffin has been indicted in a thirteen (13) co-defendant, thirty-five (35) count, indictment charging him, together with all other defendants, in a conspiracy to distribute and possession with the intent to distribute 28 grams or more of Cocaine Base ("crack"), a *detectable* amount of fentanyl, a *detectable* amount of Phencyclidine ("PCP") and a *detectable* amount of marijuana.  The alleged conspiracy is alleged to have spanned the period of sometime in January 2021 to sometime in July of 2021.  In addition, Mr. Griffin is charged with three (3) substantive offenses in Counts 11, 12 and 13 of the indictment.

Specifically, Count 11 charges him with distribution of a *detectable* amount of "crack" on March 16, 2021.  Count 12 charges him with distribution of *detectable* amount of "crack" on March 24, 2021.  Count 13 charges him with distribution of a *detectable* amount of "crack" on May 2, 2021.  He is not charged in other count of the indictment.

2. That, Mr. Griffin was arrested on an arrest warrant based on the indictment as aforesaid on July 17, 2021.  The arrest followed the shooting of him, his long-time partner, and their 6-year-old daughter during the late evening hours of July 16, 2021.  Mr. Griffin's daughter passed away as a result of her injuries.  Her funeral is scheduled for 10 AM on August 18 at the Temple of Praise in Washington, DC.  Mr. Griffin's partner was hospitalized for several days as a result of the injuries that she sustained as the result of the shooting.  Mr. Griffin was hospitalized for several days following his arrest as a result of the shooting.

3. That, Mr. Griffin, who is 30 years old, is a lifelong resident of Washington, DC.  His parents, multiple siblings, multiple aunts and uncles and cousins all call Washington, DC home.  He lives at 4244 4th St. SE with his partner of 13 years and, until July 16, 2021 when his youngest child was killed, lived with he and his partner's 2 daughters.  His remaining child lives with Mr. Griffin and his partner.  In 2016 he was arrested for gambling, pled guilty to the same and was fined $100.  That is his only conviction.[1]  At the time of his arrest, no drugs or drug paraphernalia or a significant amount of cash was found on his person.[2]  Upon information and belief, law enforcement did not recover any evidence

---

[1] On July 22, 2021, the Government filed an Omnibus Memorandum in Support of Pretrial Detention as To All Defendants in the above captioned matter.  In that Memorandum, the Government proffered that, although the Pretrial Services Report made no mention of prior arrests of Mr. Griffin, Mr. Griffin had prior arrests, without proffering how many, and argued that such arrests should be considered by the Court in determining whether to order Mr. Griffin detained notwithstanding the fact that Mr. Griffin had never been found guilty of any of those prior arrests.  In essence, the Government argues that the Court should consider Mr. Griffin guilty of the offenses for which he was arrested.

[2] Ammunition was seized from his person at the time of his arrest on the arrest warrant referenced. Accordingly, he was charged with the misdemeanor offense of Unlawful Possession of Ammunition, which

of criminal controlled substances or weapons activity at his home at the time of, or subsequent to, his arrest on July 17.

4. That, a detention hearing was held before the Honorable Magistrate Judge Harvey on July 30, 2021. At the time of the hearing, the Government primarily relied upon their Omnibus Memorandum in Support of Pretrial Detention as To All Defendants. *See,* Footnote 1, *supra.* The Government's 24-page Memorandum, which made various proffers about the dealings of the alleged controlled substances conspiracy charged as well as general proffers regarding instances of violence in the community without tying it to the alleged conspiracy specifically, made little reference to Mr. Griffin. The first time that Mr. Griffin's name appears in the Memorandum is on P. 8 which references Mr. Griffin's, and his daughter's, victimization of violence. The next reference to Mr. Griffin in the Memorandum is on P. 10 and 11 referencing Mr. Griffin's participation in 2 YouTube videos in September and December *2019* which purportedly glorifies the drug culture. The last time Mr. Griffin is mentioned in the Memorandum is on P. 18 where the Government argues that, because of the ammunition charges lodged against him at the time of his arrest in the instant matter, as well his prior arrests and the offenses with which he has been charged in Counts 11, 12 and 13 in the instant indictment, there are no conditions of release which would assure the safety of the community if Mr. Griffin were to be released. Undersigned counsel for Mr. Griffin would respectfully submit that that is not true.

5. That, undersigned counsel for Mr. Griffin submitted that reliance on Mr. Griffin's prior arrests as though he were guilty of the same would be inappropriate and that, other than the charges contained in Counts 11 through 13 of the indictment for selling a

---

is being prosecuted by the Office of the Attorney General for the District of Columbia, and was arraigned on that offense on July 19, 2021.

3

*detectable* amount of crack 4 and 2 months earlier, for which he has not been found guilty and, in any event, does not evidence a conspiracy, and where there were no acts of violence which were even remotely attributable to him, the Government had not met the clear and convincing standard necessary to support detention on the basis that there were no conditions, or combination of conditions, which would *reasonably* assure the safety of the community.[3]  Counsel also refenced the fact that there was no indicia of Mr. Griffin's involvement with controlled substances at the time of, or subsequent to, his July 17 arrest. More importantly, undersigned counsel proffered that placement into the HISP program which would include GPS monitoring, coupled with a condition of release to stay away from the 2900 block of MLK Ave, SE, where the alleged drug conspiracy is alleged to have operated, were conditions which would *reasonably* assure the safety of the community.

6. That, notwithstanding the submission of counsel regarding the conditions of release which would reasonably assure the safety of the community, and notwithstanding that Magistrate Judge Harvey found that Mr. Griffin's lack of criminal history rebutted the presumption of dangerousness, Magistrate Judge Harvey concluded that the danger posed by Mr. Griffin as a member of a violent crew of drug dealers was too great to permit release under any conditions. Notwithstanding that conclusion, Magistrate Harvey cited nothing other than Mr. Griffin's alleged association with members of an alleged conspiracy which supported his conclusion as to Mr. Griffin specifically. He cited absolutely no fact specific to Mr. Griffin which would support that conclusion.

7. That, it is a well-established principle that criminal defendants should not suffer imprisonment on a charge for which they have yet to be convicted. *See Stack v. Boyle*,

---

[3] Reasonably assuring the safety of the community as referenced in 18 USC, §3142(c)(1) does not require an absolute guarantee.

4

342 U.S. 1 (1951). In 1984, Congress enacted the Bail Reform Act to solidify this principle and to ensure that pretrial detention is utilized in only the rare cases in which community safety and flight are serious concerns. In passing the Act, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Rather, Congress intended to reserve pretrial detention for only "a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189. When implementing the provisions of the Bail Reform Act, courts have recognized that the Act clearly favors release over pretrial detention. *See United States v. Orta*, 760 F.2d 887, 890-92 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D. Kan. 1985); *see also United States v. Salerno*, 481 U.S. 751, 755 (1987) ("In our society liberty is the norm and detention prior to trial or without trial is a carefully limited exception").

    8. That, the Bail Reform Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Even if a court determines that personal recognizance or an unsecured appearance bond will not assure a defendant's appearance in court or protect the safety of the community, the court is not permitted to order the pretrial detention of a defendant without further inquiry. When personal recognizance or an unsecured appearance bond are not sufficient, the court must consider imposing an alternative condition, or combination of conditions, that will assure the defendant's appearance in court and the safety of the

community.  *See* 18 U.S.C. § 3142(c).[4]  Examples of alternative conditions courts may consider imposing include employment or educational requirements, travel restrictions, stay away orders, a specified curfew, or a condition that the defendant refrain from the use of any controlled substance.  *See* 18 U.S.C. § 3142(c)(1)(B).

9.  That, instructive on the specific issue presented in the case at bar is the U.S. Court of Appeals for the District of Columbia Circuit decision in *United States v. Munchel,* 991 F.3d 1273 (3/26/21).  Citing *Salerno, supra,* the *Munchel* Court recognized that, in order to sustain their burden of clear and convincing evidence that there are no conditions which the Court can impose which would reasonably assure the safety of the community, the Government must show that the specific defendant before the Court presents an *identified* and *articulable threat* to an individual or the community which cannot be satisfied by the imposition of conditions of release.  *Munchel,* at 1280.  *Munchel* later cited *United States v. Tortora,* 922 F.2d 880 (1st Cir. 1990) for the proposition that "[d]etention determinations must be made individually and, in the first analysis, must be based on the evidence which is before the court regarding the particular defendant."  *Munchel,* at 1283.  The *Munchel* Court also cited with approval, and with particular import to the instant matter, the proposition enunciated in *United States v. Briggs,* 697 F.3d 98 to the effect that, whether a defendant poses a threat of dealing drugs may depend on the defendant's past experience in dealing.  *Munchel* at 1283.

10.  That, what becomes clear is that both the Government and Magistrate Judge Harvey ignored the dictates of *Munchel* in failing to assess the propriety of Mr. Griffin's detention based on the *individualized* circumstances of Mr. Griffin.  Rather, the decision to

---

[4] When imposing an alternative condition, or combination of conditions, the court must select the "least restrictive" condition(s).  *See* 18 U.S.C. § 3142(c)(1)(B).

seek and order the detention of Mr. Griffin was based almost entirely on the alleged violence and drug dealing being perpetrated by others rather than Mr. Griffin himself.

11. That, Mr. Griffin submits that the Government has not sustained their burden that he poses an unreasonable risk of flight or danger to the community which has to be addressed by way of pretrial detention rather than conditional release which may include both release to the HISP program, including GPS monitoring, as well as a condition to stay away from the area where the criminal activity with which he is charged is alleged to have occurred.  There is every reason to believe that such a combination of conditions, in addition to the standard conditions of regular reporting to the Pretrial Services Agency and monitoring for the use of controlled substances, will ensure that Mr. Griffin will not be in the area where the controlled substances activity the Government alleges occurred.  The imposition of such conditions where his whereabouts and activities are so closely monitored in real time would permit the Court and law enforcement to step in immediately upon a violation of such conditions.  Under such circumstances, the likelihood of such a violation is so remote so as to be virtually non-existent for a person like Mr. Griffin whose past does not portend such a violation.  Mr. Griffin does not present a danger to the community which cannot be addressed as submitted.

**WHEREFORE**, for these and such other reasons as may appear to this Honorable Court, the Mr. Griffin requests that the Court release him into the HISP program, including GPS monitoring and a condition to stay away from the 2900 block of MLK Ave, SE, and upon any other conditions which the Court deems necessary in order to assure appearance in Court for further proceedings and the safety of the community.

Respectfully submitted,

_____/S/_____
Clark U. Fleckinger II
Attorney for Defendant
9805 Ashburton Lane
Bethesda, MD 20817
(301)294-7301
cufleckinger@aol.com
Bar No. 362393

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Defendant's Motion to Reconsider and Vacate Order of Detention has been served, by ECF, upon AUSA David Henek, at the United States Attorney's Office, located at 555 4th Street, NW, Washington, D.C. 20530, this 12th day of August, 2021.

_____/S/_____
Clark U. Fleckinger II