UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES of AMERICA** : | |
| : | |
| Plaintiff : | |
| : | Crim. No.: 21-CR-00465-2 (DLF) |
| v.   : | |
| : | |
| **NICO GRIFFIN** : | |
| : | |
| Defendant : | |

**MEMORANDUM IN AID OF SENTENCING**

The Defendant, **NICO GRIFFIN,** by and through his attorney, Clark U. Fleckinger II, respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence which is "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S. Ct. 738 (2005).  Pursuant thereto, Mr. Griffin would respectfully request that the Court impose a sentence which varies slightly downward from the low end of the applicable Sentencing Guideline range.

I.   **Relevant Personal and Case Background**

Nico Griffin was born in the District of Columbia and has resided here his entire life. He was raised in and/or around the neighborhood in which the events that bring him before the Court in the above captioned matter occurred and he grew to adulthood with many of those with whom he found himself indicted in the early part of July 2021.

Mr. Griffin was raised by both a father and a mother with whom he lived together with his 4 siblings.  His mother passed away roughly 6 years ago and his oldest brother was shot and killed approximately 8 years ago.  He was very close to both and he remains close

with his father and his surviving siblings. In addition, he has substantial extended family by way of grandparents, aunts, uncles and cousins. They are all very supportive of each other and are very supportive of Mr. Griffin. They will continue to be supportive of Mr. Griffin when he is, ultimately, released from imprisonment.[1] Two of those extended family members have provided letters for the Court's sentencing consideration. Specifically, his paternal grandmother, Margaret Young, describes Mr. Griffin as a respectful, soft spoken, helpful, caring and loving person toward his entire family as well as herself. *See,* Exhibit A, attached hereto. Similarly, his cousin, Shane Brown, describes Mr. Griffin in comparable terms. *See,* Exhibit B, attached hereto.

Mr. Griffin's immediate family now consists of his fiancé, Dominique Courtney, with whom he has had a steady relationship for 15 plus years and his 11 year old daughter, Nakyiah (AKA: KyKy) who he loves and misses dearly. KyKy has also provided an e-mail to the Court describing how she misses her father. *See,* Exhibit C, attached hereto.[2] In addition, Nyiah was born to Mr. Griffin and Ms. Courtney. Nyiah was 6 years old when she was tragically killed on July 16, 2021 during a drive by shooting which took place in the neighborhood where the activities which are the subject of the July 2021 indictment, and the various superseding indictments, occurred. Both Mr. Griffin and Ms. Courtney were also victims of that shooting.[3]

Mr. Griffin was taken to the hospital following that shooting and released the following morning with instructions to follow up with his health care providers.[4] When

---

[1] Prior to his arrest, Mr. Griffin worked, of and on, for his cousins who have a welding business. Upon release, Mr. Griffin will resume working for that welding business.
[2] KyKy's mother, Dominique Courtney, assisted KyKy with her e-mail to the Court and was forwarded from the e-mail address of KyKy's maternal grandmother.
[3] Mr. Griffin was shot in the leg and Ms. Courtney was shot in the hip.
[4] Contrary to proffers by the Government in their Memorandum in Aid of Sentencing, Mr. Griffin did not check himself out of the hospital.

released by the hospital he was taken to the homicide division of the MPD and, following an interview by law enforcement, was released to go home. He did go home where he learned that there was to be community activity to mourn the death of his daughter where the shooting had taken place the evening before. Mr. Griffin and went back to that area later in the day to attend those events. While there he was arrested on the original indictment which brings him before the Court in the above captioned matter. He was detained and hospitalized following his arrest and has been detained either at a hospital or at the Correctional Treatment Facility ("CTF") ever since. He was unable to attend the funeral of Nyiah as the result of the detention and, in addition to struggling with the various medical issues he has suffered from as a result of the injuries from the shooting and other, unrelated medical issues,[5] he has substantially suffered from the emotional issues associated with the loss of his daughter, Nyiah, who he loved, and now misses, as much he loves and misses KyKy.[6]

---

[5] Despite substantial effort to obtain both medical and mental health treatment while detained, Mr. Griffin has received little treatment for injuries associated with the shooting although those injuries have now resolved and virtually no treatment for either the chronic back pain from which he suffers and the emotional trauma as the result of the death of his daughter. In addition, in January 2022, Mr. Griffin contracted COVID-19 and was quarantined in lock down for 2½ weeks where he received virtually no treatment.

[6] In their Memorandum in Aid of Sentencing, the Government heaps substantial blame on Mr. Griffin for the death of his daughter and proffers that Mr. Griffin knew that the neighborhood was the subject of recent violence but, nevertheless, suggests that he recklessly took his daughter to that neighborhood knowing how unsafe the neighborhood was thereby exposing her to the violence that the Government blames on him. While Mr. Griffin certainly agonizes in the circumstances surrounding Nyiah's death and wishes that Ms. Courtney and Nyiah (as well as himself) had been there, it is inappropriate for the Government to blame Nyiah's death on Mr. Griffin. Mr. Griffin was unaware of the violence that the Government suggests that he was aware of. More importantly, while Mr. Griffin was in the neighborhood with the people that he had grown up with on a warm July Friday evening, Ms. Courtney and Nyiah were visiting a friend of Ms. Courtney's elsewhere in the neighborhood. They left that friend shortly before 11 PM and went to Mr. Griffin so that they could all leave and go home together. At the point that Ms. Courtney and Nyiah arrived to go home with Mr. Griffin, the shooting occurred and was not precipitated by any event of which Mr. Griffin was aware. Mr. Griffin had no part in that shooting other than as a victim, has no reason to believe that he was the target of the shooting and, upon information and belief, neither law enforcement, nor Mr. Griffin, have any idea as to the perpetrators of the shooting or their motive. To blame that incident on Mr. Griffin is without any evidentiary support.

Although Mr. Griffin was a very low level street worker in the drug selling business which is the subject of the indictment, Mr. Griffin does recognize the impropriety, the quality of life impact on the neighborhood and the criminality of his behavior which gave rise to this prosecution of him[7] and has vowed, for the sake of his family and for his own sake, to take any and all steps necessary to ensure that he does not put himself and his family into the position that he and his family find themselves in now.  To that end, he entered into a plea early in the proceedings.  Although the plea was not entered until March 23, 2022, the terms of the plea had been worked out by February 25, 2022 and the Government was notified of the acceptance of the same on or about March 8, 2022 following undersigned counsel having traveled out of the country for several days.

In any event, Mr. Griffin regrets every day having engaged in the conduct which was the basis for his plea and ultimate conviction.  He understands that his lack of steady employment, due in large part to under education when he was young, contributed substantially to the temptation of "easy" money and a life style that has resulted in his detention for almost a year and likely imprisonment for some months to come.  He knows that it is incumbent upon him to take the steps necessary to remove himself from that environment.  Accordingly, while detained, Mr. Griffin participated in every program available to him at CTF in order to improve his employment prospects when he is released from imprisonment and to improve his ability to cope with the rigors of raising a family in a responsible and productive environment.  Attached hereto as Exhibits D, E and F are Certificates of Completion of The Hope Foundation's Re-Entry Network program, the March 21, 2022 OSHA General Industry (Construction) Course program, and the OSHA

---

[7] It is worthy of note in this context that Mr. Griffin did not engage in violence during the course of his participation in the drug selling enterprise.

General Industry (Culinary) program, respectively, evidencing those efforts. He will continue to pursue any and all available programs toward self-improvement with the goal of becoming the responsible and supportive father and partner that he knows his family needs.

## II.   Presentence Report and Guideline Calculation

Mr. Griffin has no objection to the sentencing guideline calculation made by the U.S. Probation Office in the above captioned matter which provides a range of 30 to 37 months of imprisonment. Nevertheless, undersigned counsel did raise some issues regarding the draft PSR. All but one of those issues have been resolved. The only remaining issue is the date of the last of the 3 "controlled buys" that Mr. Griffin is alleged to have participated in pursuant to the indictment. Count 13 of the indictment and the various superseding indictments alleged that Mr. Griffin engaged in a "controlled buy" which was alleged to have occurred on May 2, 2021 rather than April 2, 2021. Discovery received in the matter corroborated May 2, 2021 as the date of the alleged "controlled buy" in which Mr. Griffin participated. Upon information and belief, the Government will concur with that contention.

## III.   Non-Guideline Sentencing Factors To be Considered

As the Court is aware, the sentencing of federal criminal defendants is governed by 18 U.S.C. § 3553 as interpreted by *United States v. Booker*, 125 S. Ct. 738 (2005) and its progeny. In that regard, *Booker* restored the district courts' ability to fashion a sentence tailored to the individual circumstances of the case and defendant by requiring sentencing courts to consider *all* of the various factors referenced in § 3553 in addition to consideration of the now discretionary application of an appropriately calculated guideline sentencing range. Accordingly, the guidelines are now only one of several factors,[8] pursuant to the

---

[8] In fact, although the District Court must give respectful consideration to the guidelines in determining a sufficient sentence, *Gall v. United States,* 128 S.Ct. 586, 594 (2007) it may not presume that the guideline

5

dictates of § 3553, which the Court must consider when imposing a sentence which is, as per the dictate of §3553, "sufficient, but not greater than necessary" to comply with the purposes set forth in that statute.[9]

Also, and as the Court is aware, the factors which the court is required to consider pursuant to the dictates of § 3553(a) are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution; and, (5) the sentencing range calculated pursuant to the Federal Sentencing Guidelines. 18 U.S.C. § 3553. Perhaps even more important, however, is that *Booker* and its progeny have established an independent limit on the sentence that may be imposed. That is for the reason that the primary sentencing mandate of § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment, justice, deterrence, incapacitation, and rehabilitation:

---

sentence is the correct one, *Rita v. United States,* 127 S.Ct. 2456, 2465 (2007), or even give greater weight to the guidelines than other sentencing considerations. *United States v. Sachsenmaier,* 491 F.3d 680, 685 (7th Cir. 2007). In fact, it is respectfully submitted that a sentencing court should consider all relevant sentencing factors and not give undue weight to the Sentencing Guidelines. In that regard, judicial tradition in sentencing strongly suggests that every sentencing judge "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall* at 598 (quoting *Koons v. United States,* 518 81, 113 (1996).

[9] Mr. Griffin would submit that all of the other sentencing factors referenced in §3553 are subservient to §3553(a)'s overarching mandate that a sentence be sufficient, *but not greater than necessary,* to comply with the statutory purposes of sentencing.

> The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a) (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is *statutorily prohibited* from sentencing—even if a greater sentence is recommended by the sentencing guidelines. *Kimbrough v. United States,* 128 S.Ct. 558, 570 (2007).

Mr. Griffin is requesting that the Court vary slightly downward from the low end of the otherwise applicable guideline sentence and fashion a variant sentence which includes credit for the almost 1 year that he has been detained since his July 17, 2021 arrest.[10]

Mr. Griffin is aware that the Government is requesting that he be required to serve a 37 month period of imprisonment which is at the high end of the Guideline calculation. However, Mr. Griffin respectfully submits that the sentence that the Government is requesting is at odds with the "*sufficient, but not greater than necessary*" mandate of § 3553(a) and is based on factors that should not be significantly considered by the Court.

The first factor that the Government cites in support for sentencing at the high end of the Guidelines are the various incidents of violence in the area where the drug enterprise of which Mr. Griffin participated. However, there is no evidence that would suggest that Mr. Griffin participated in any acts of violence other than as a July 16, 2021 victim.

Second, the Government suggests that a sentence at the high range of the Guidelines is appropriate because, they imply, he was responsible for the death of his daughter, Nyiah. As noted previously,[11] Mr. Griffin's daughter was with her mother, Ms. Courtney, visiting a

---

[10] U.S. Probation has recommended that Mr. Griffin be sentenced to the 30 month low end of the Guidelines.
[11] *See,* Footnote 6, *supra.*

friend of her mother in the same neighborhood where they, Mr. Griffin and Ms. Courtney, grew up and had friends and acquaintances. Ms. Courtney and their daughter, Nyiah, left Ms Courtney's friend to join Mr. Griffin so that they could all leave the area together and go home. As they were leaving, an unprovoked shooting occurred by unknown assailants and Mr. Griffin, Ms. Courtney and Nyiah were among the victims. Nyiah's death was tragic and has sickened Mr. Griffin for the last year and will continue to haunt him forever more. Those circumstances should not be made the basis for imposing a harsher than necessary sentence. The Court should not add further to the pain that Mr. Griffin already lives with every day.

The Government also suggests that the Court should sentence Mr. Griffin at the high end of the Guidelines because, 2 years prior to the enterprise of which he was a low level part, Mr. Griffin participated in 2 You Tube videos which tended to glorify the drug culture of which he was admittedly a part and for which he has now been prosecuted. Glorification of that culture 2 years prior to his participation in that culture for which he is now being prosecuted should not be made the basis for harsher sentencing any more than further evidence of the crime for which he has taken responsibility should be made the basis for harsher sentencing.

Finally, the Government contends that Mr. Griffin should receive as harsh a sentence as the Sentencing Guidelines recommends because he has a history of arrests. Mr. Griffin respectfully submits that, for many reasons, a sentencing court should not equate an arrest which does not result in a conviction with guilt of the offense for which the person was arrested absent reliable evidence that the conduct for which the person was arrested actually occurred. Mr. Griffin submits that the initial police narrative supporting the arrest is not reliable evidence of that conduct. As the Court is aware, arrests in some parts of society are more prevalent and problematic than in other parts of society and frequently have

components of race and class as well variances in policing different communities and community and interpersonal dynamics.  It is inappropriate for the Government to suggest that a harsher sentence is warranted due to such arrests and the Court should not validate that notion.

Mr. Griffin appreciates that one of the factors that a sentencing court should take into consideration when imposing sentence is to provide "just punishment" for the offense.  18 USC § 3553(a)(2)(A).  And, certainly a sentence as advocated by the Government constitutes punishment.  However, counsel for Mr. Griffin would submit that it would not constitute "just punishment."

Such a sentence as advocated by the Government would ignore all of the other factors which militate against such a sentence.  It ignores the pain and the trauma of losing a child to violence.  It ignores to the support that Mr. Griffin has provided his family and the need that his family has for him.  It ignores the fact that, as a result of the trauma noted above, as well as the medical, mental health, and legal/detention issues that he has lived with for the last year, Mr. Griffin is changed man.   He is not the same person now that he was a year ago.  If punishment is to be "just" the sentence imposed should take into account that part of a Defendant's life which evidences a Defendant's capability of redemption and his genuine promises to himself and to his family of living a responsible, supportive and law abiding life.  Mr. Griffin will fulfill that promise.

Mr. Griffin recognizes, however, that there is a deterrent component to sentencing which is a factor that he does not minimize.  It is respectfully submitted, however, that the sentencing goal of specifically deterring Mr. Griffin from future criminality should carry little weight.  He is already deterred as a result of the events of the past year and will be

forever deterred whether the Court sentences him to 21 months or 27 months or 37 months. The same deterrent effect also applies to generally deterring others who might be tempted to engage in similar conduct. Mr. Griffins submits that a sentence at the lower end of that range is sufficient, but not greater than necessary, to promote the deterrence goals of sentencing.

The foregoing is not to suggest that Mr. Griffin's participation in the drug selling enterprise was not serious and should not be taken into account when determining an appropriate sentence. But, Mr. Griffin submits that a sentence in the range of 24 to 27 months sufficiently addresses the seriousness of his conduct and, accordingly, is sufficient, but not greater than necessary, to advance the goals of a just sentence.

### IV.     Conclusion

Accordingly, and for the reasons discussed above, Mr. Griffin respectfully requests that the Court vary slightly downward from the low end of a Guideline compliant sentence and impose a sentence of 24 months.

Respectfully submitted,

_____/S/_____
Clark U. Fleckinger II
Attorney for Defendant
9805 Ashburton Lane
Bethesda, MD 20817
(301)294-7301
cufleckinger@aol.com
Bar No. 362393

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Aid of Sentencing has been served, by ECF, upon AUSA David Henek, at the United States Attorney's Office, located at 555 4th Street, NW, Washington, D.C. 20530, this 28th day of June, 2022.

_____/S/_____
Clark U. Fleckinger II